IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Paul Abraham, ) | Case No. 8:20-cv-03272-RMG-JDA |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB"). For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

**PROCEDURAL HISTORY**

In September 2017, Plaintiff filed an application for DIB, alleging an onset disability date of July 1, 2015. [R. 154–55.] The claim was denied initially and on reconsideration by the Social Security Administration ("the Administration"). [R. 70–84, 87–102.] Plaintiff requested a hearing before an administrative law judge ("ALJ"), and on November 6, 2018, ALJ Tammy Georgian conducted a de novo hearing on Plaintiff's claims. [R. 41–69.] The ALJ issued a decision on February 27, 2019, finding Plaintiff not disabled under the Social Security Act ("the Act"). [R. 8–28.] At Step 1,[1] the ALJ found Plaintiff met the Act's insured-

---

[1]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

status requirements through December 31, 2020, and had not engaged in substantial gainful activity since his alleged onset date of July 1, 2015. [R. 13–14, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease and obesity. [R. 14, Finding 3.] The ALJ also found Plaintiff had non-severe impairments of diabetes mellitus, hypertension, cardiomyopathy, congestive heart failure, COPD, hyperlipidemia, and an unspecified neurocognitive disorder. [R. 14–15.] At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 16, Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> [T]he claimant has the [RFC] to perform light work as defined in 20 C.F.R. § 404.1567(b) except he can occasionally climb ramps and stairs; can never climb ladders, ropes, and scaffolds; can frequently stoop; can occasionally kneel, crouch, and crawl; and can frequently push and pull with the bilateral upper extremities.

[R. 17, Finding 5.] Based on this RFC finding and on Plaintiff's age, education, work experience, RFC, and the testimony of a vocational expert, the ALJ determined at Step 4 that Plaintiff was capable of performing his past relevant work as a nightclub manager, as that job was generally performed in the national economy. [R. 20, Finding 6.] Additionally, the ALJ alternatively found there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform. [R. 21–22.] Thus, the ALJ found that Plaintiff had not been under a disability as defined in the Act at any time from July 1, 2015, through the date of the decision. [R. 22, Finding 7.]

Although Plaintiff filed an untimely appeal, his request for more time was granted by the Appeals Council. [R. 6–7, 29.] On July 14, 2020, the Appeals Council found no basis for changing the ALJ's decision. [R. 1–3.] Plaintiff filed the instant request for judicial review in this Court on September 14, 2020. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff asserts the ALJ's decision is not supported by substantial evidence and should be remanded. [Doc. 17.] Plaintiff argues: (1) that the ALJ failed to properly consider the evidence in formulating the RFC, particularly with regard to Plaintiff's carpal tunnel syndrome ("CTS") and obesity [*id.* at 14–21]; (2) that the ALJ did not properly evaluate the medical opinions offered in Plaintiff's case [*id.* at 21–27]; and (3) that the ALJ improperly rejected Plaintiff's subjective complaints based on her consideration of the nature of Plaintiff's activities of daily but not the extent to which she could perform those activities [*id.* at 27–31].

Although the Commissioner admits that there are some minor errors in the ALJ's decision, the Commissioner submits that "the ALJ set forth substantial evidence throughout the decision that affords this Court the opportunity to perform meaningful review." [Doc. 18 at 1.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to

support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more

evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207.

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[2] With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and

---

[2]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

### I.     The Five-Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699

F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.   *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B.   *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that,

when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

### C.   *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

### D.   *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[3] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

### E.   *Other Work*

---

[3] Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

9

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[4] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in

---

[4] An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II. Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III. Medical Opinions

For claims filed on or after March 27, 2017, as Plaintiff's is, the applicable regulations require ALJs to consider the persuasiveness of each medical opinion of record in accordance with the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the opinion.[5] 20 C.F.R. § 404.1520c(b), (c). Regarding supportability, "[t]he more relevant

---

[5]The new regulations define the term "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions." 20 C.F.R. §§ 404.1513(a)(2).

11

the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion . . . the more persuasive the medical opinion will be." 20 C.F.R. § 404.1520c(c)(1). As for the relationship with the claimant, ALJs consider the "length of the treatment relationship," the "[f]requency of examinations," the "[p]urpose of the treatment relationship," the "[e]xtent of the treatment relationship," and whether the source has examined the claimant. 20 C.F.R. § 404.1520c(c)(3).

### IV.   Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

### V.   Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). Social Security Ruling ("SSR") 16-3p provides, "[i]n considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of

symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Social Security Ruling 16-3p Titles II and XVI: Evaluation of Symptoms In Disability Claims, 82 Fed. Reg. 49,462, 49,464 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion); *see also* SSR 16-3p, 82 Fed. Reg. at 49,463. First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce" the alleged symptoms. *Id.* (quoting *Craig*, 76 F.3d at 594); *see* SSR 16-3p, 82 Fed. Reg. at 49,463. Second, the ALJ must evaluate "the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities . . . or to function independently." SSR 16-3p, 82 Fed. Reg. at 49,464; *see* 20 C.F.R. § 404.1528 (noting that the ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence).

## APPLICATION AND ANALYSIS

**RFC Analysis**

The Administration has defined RFC as

> what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an

> individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.

SSR 96-8p, 61 Fed. Reg. 34,474-01, at 34,475 (July 2, 1996) (footnote omitted). "The RFC assessment must first identify the [claimant's] functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§] 404.1545." *Id.* Only after this identification and assessment may RFC be expressed in terms of th exertional levels of work: sedentary, light, medium, heavy, and very heavy. *Id.* Additionally, the Administration has determined that, in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to medically determinable impairments. It is incorrect to find that [a claimant] has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the [claimant] had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights.) Age and body habitus (i.e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the [claimant's] medically determinable impairment(s) and related symptoms) are not factors in assessing RFC . . . .

*Id.* at 34,476.

To assess a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements. *Id.* at 34,477.

**Record Evidence**

    ***Plaintiff's Hearing Testimony***

At the hearing, Plaintiff testified that he was no longer able to work after falling from a ladder. [R. 48.] Plaintiff indicated that he had pain in his back and also had issues with his hands due to CTS. [*Id.*] Plaintiff testified he was unable to prepare food for himself as he often dropped things due to his difficulties using his hands. [R. 50–51.] Following that testimony, the ALJ asked Plaintiff's attorney if there was a diagnosis of CTS or any nerve conduction studies or other objective evidence that showed CTS, and Plaintiff's counsel responded, "I haven't seen it. . . . There were nerve conduction studies done, but they were done on his leg and his arms. There was not one done on the hands that I am aware of yet." [R. 51.] Plaintiff's attorney went on to explain that Plaintiff had neuropathy with edema from his congestive heart failure, but part of the issue with the lack of tests or records was Plaintiff's lack of insurance. [*Id.*]

Plaintiff testified that he performed some hygiene activities himself—he brushed his teeth and was able to bathe in a modified shower. [R. 52.] Regarding activities, he testified that he mostly watched television. [*Id.*] According to Plaintiff, his family members shopped for him, but if he ever went to the store, he pushed the cart because he could not walk freely. [R. 53.] When asked by his attorney if any doctors had told him that his hand problems were related to his back problems, Plaintiff responded, "[A]ctually, they said the nerve endings showed that I had [CTS]." [R. 55.] Plaintiff later testified that he had swelling in his hands. [R. 59.] He also testified that he was experiencing tingling and cramping in at least one of his hands during the hearing that prevented him from moving it at that time. [R. 60.] Plaintiff indicated that he could use his hands freely for only about one hour out of an eight-hour workday. [R. 61.]

### *Medical Records*

15

Plaintiff's medical records include a report from electromyography ("EMG") and nerve conduction velocity ("NCV") testing performed on January 15, 2015, that notes "[m]oderate/severe right CTS, without denervation," among other issues. [R. 598, 614.] The referring physician for that testing was George Sandoz, M.D. [*Id.*] On February 19, 2015, Plaintiff saw Dr. Sandoz, at which time Plaintiff was advised to continue wearing his wrist splint for CTS. [R. 620, 623.] The office visit notes from that visit further noted positive Tinel's sign but otherwise indicated normal fine motor skills. [*Id.*]

In later medical records from Plaintiff's visits to Little River Medical Center, it was noted that Plaintiff had a history of CTS. [R. 403, 407, 411, 416.]

**The ALJ's Decision**

The ALJ acknowledged Plaintiff's allegation of CTS but found the impairment was not medically determinable based on the following reasoning:

> A medically determinable impairment may not be established solely because of a claimant's allegations regarding symptoms; there must be anatomical or physiological abnormalities that have been demonstrated by medically acceptable clinical and diagnostic techniques (20 CFR 404.1529, and 416.929; SSR 16-3p). Although the record contains a single instance of a positive Tinel's sign accompanied by an instruction to continue wearing wrist splints, objective medical evidence such as MRIs or x-rays are not within the record to establish this impairment (17F/18; 18F/2). Otherwise, the impairment was only referenced as medical history, with no significant treatment (9F). As such, I find the claimant's [CTS] is not a medically determinable impairment (CFR 404.1529(b) and 20 CFR 416.929(b)).

[R. 14.]

In summarizing Plaintiff's hearing testimony, the ALJ noted Plaintiff's reports that his impairments limited his ability to use his hands. [R. 17.] She ultimately concluded that

"although the claimant's impairments have caused limitations, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence." [R. 18.] The only upper extremity limitations included in the RFC were that Plaintiff "can frequently push and pull with the upper bilateral extremities." [R. 19.]

**Discussion**

Having reviewed the record, the Court concludes that meaningful judicial review is not possible because the ALJ erroneously found that Plaintiff's CTS was not a medically determinable impairment due to a purported lack of objective evidence to support that diagnosis. As outlined above, Plaintiff had presented objective evidence in the form of the report from EMG and NCV testing, which showed "moderate/severe right CTS." [R. 598, 614.] It is the ALJ's duty to "build an accurate and logical bridge from the evidence to his conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (internal quotation marks omitted). The ALJ failed to do so here and thus committed error.[6]

The Commissioner offers that "the ALJ correctly found that Plaintiff's CTS did not qualify as a medically determinable impairment because the diagnosis was not supported by objective medical evidence during the relevant period." [Doc. 18 at 12.] However, the ALJ did not indicate that she was rejecting Plaintiff's CTS because the objective evidence fell outside the alleged period of disability. *See Canady v. Colvin*, No. 5:12-2507-KDW,

---

[6]Although Plaintiff's attorney misinformed the ALJ about the existence of test results that showed CTS, it is well-established that "an ALJ has a duty to investigate the facts and develop the record independent of the claimant or his counsel." *Pearson v. Colvin*, 810 F.3d 204, 210 (4th Cir. 2015).

2014 WL 4063155, at *3 (D.S.C. Aug. 14, 2014) ("The court cannot look to post-hoc offerings to support the Commissioner's decision."). And, in any event,

> [t]he Social Security regulations provide that an ALJ "will consider all evidence in [a claimant's] case record when [making] a determination or decision whether [the claimant is] disabled." District courts in the Fourth Circuit have held that "all evidence" under § 404.1520(a)(3) includes medical records predating a claimant's alleged onset date.

*Lewis v. Saul*, No. 5:19-cv-00298-DCN, 2021 WL 1040512, at *3 (D.S.C. Mar. 18, 2021) (internal citation omitted). The Commissioner's post hoc argument is unavailing in light of the regulatory requirements.

The Commissioner additionally argues that any error is harmless because "Plaintiff has failed to show any work-related effects related to his CTS." [Doc. 18 at 13.] In particular, the Commissioner notes that Plaintiff had normal fine motor skills, coordination, and sensation at the time of his CTS diagnosis and that none of the medical opinions offered for the relevant period included manipulative limitations due to CTS or anything else. [*Id.* at 13–14.]

Initially, it is not clear that the physicians who offered those opinions recognized Plaintiff's CTS diagnosis as confirmed by EMG and NCV testing. [*See* R. 71–77, 88–93.] Also, Plaintiff's own testimony about his abilities and limitations supported manipulative restrictions [R. 50–51, 60–61], but even if the ALJ found such testimony to be persuasive, she was precluded from incorporating such restrictions into the RFC unless Plaintiff's limitations were attributable to a "medically determinable impairment." *See* SSR 96-8p, 61 Fed. Reg. at 34,476. The ALJ included in the RFC that Plaintiff could only "frequently push

and pull with the bilateral upper extremities"[7] [R. 17], but presumably that restriction was not due to CTS since the ALJ had rejected that as a medically determinable impairment. Furthermore, because the ALJ did not include a function-by-function analysis discussing whether there was a need for manipulative limitations [*see* R. 17–20], it is not evident what consideration, if any, she gave to Plaintiff's testimony concerning his manipulative issues. According to the vocational expert, had a hypothetical individual been limited to occasional handling and fingering, in addition to having the other restrictions the ALJ outlined, any substantial work would have been precluded. [R. 68.] The Court thus cannot find the ALJ's error to be harmless based on the record. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (finding the ALJ's error harmless when ALJ would have reached the same result notwithstanding an initial error in his analysis).

For foregoing reasons, the Court cannot find that the ALJ's decision is supported by substantial evidence and that the proper legal standard was applied. As such, the Court recommends that the ALJ's decision be reversed and the case remanded for further proceedings so that the ALJ can evaluate the evidence in accordance with the applicable rules and adequately explain her decision.

---

[7]Of note, the parties question whether the ALJ meant to limit Plaintiff's upper or lower extremities in the RFC. [*See* Docs. 17 at 25–27; 18 at 16.] The record is ambiguous. The ALJ found persuasive the state agency experts' opinions that Plaintiff was limited in his ability to push and pull in his lower extremities but had no manipulative limitations. [R. 19, 80–81, 97–98.] Nevertheless, twice in her decision, and once while questioning the vocational expert at the hearing, the ALJ included upper extremity limitations of frequent pushing and pulling. [*See* R. 17, 19, 65.] Those upper extremity limitations are not otherwise explained in the decision.

**Remaining Allegations of Error**

Because the Court finds that the ALJ made errors in deciding Plaintiff's medically determinable impairments and recommends remand on that basis, the Court declines to address Plaintiff's remaining allegations of error.  *See Hancock v. Barnhart*, 206 F. Supp. 2d 757, 763 n.3 (W.D. Va. 2002).  On remand, however, the Commissioner should consider Plaintiff's remaining allegations of error.

### **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be REVERSED pursuant to sentence four of 42 U.S.C. § 405(g), and the case be REMANDED to the Commissioner for further administrative action consistent with this Report and Recommendation.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>
United States Magistrate Judge

September 29, 2021
Greenville, South Carolina